## DALLAS LOGAN V. THE STATE OF TEXAS.

IN COURT OF APPEALS, TYLER TERM, 1884.

*Evidence—Bill of Exceptions.*—To be sufficient, a bill of exceptions to evidence admitted over objection must disclose the ground of objection.

*Same—Practice.*—The rule, that when evidence inadmissible *per se* has been admitted over objection, it will be presumed to have prejudiced the accused, whether or not it so did in fact, and is therefore ground for reversal, is a sound one when

carried to its legitimate extent, but it cannot be extended so as to include the admission of evidence that is palpably harmless. When the rule is invoked, the bill of exceptions shall show wherein the evidence complained of would tend to prejudice the accused.

*Judgments* —Judgments even in criminal cases, will not be disturbed because of immaterial errors.

*Same—Evidence—Threats.*—In a murder trial the defense proposed to prove by one L. that on the day prior to the homicide, one T. warned the defendant that the deceased had threatened his life, and that, on the day of the homicide and prior thereto, the said T. told the witness that the deceased was hunting for the defendant and threatening his life. The proposed evidence was excluded as hearsay. *Held*, error, inasmuch as the object of the proposed evidence was to prove the communication made by T. to the defendant, and not to prove its truth or falsity.

*Same.*—When a defendant accused of murder seeks to justify on the ground of threats against his own life, he is permitted under the code to introduce evidence of such threats whether communicated or not, but no threats will justify unless it be shown that, at the time of the homicide, the person killed, by some act then done, manifested an intention to execute the threats so made. Evidence that when the defendant fired the fatal shot, the deceased by his acts, manifested an intention of drawing a weapon to use upon the defendant, was erroneously excluded.

*Practice—Charge of the Court.*—A charge of the court must be considered as a whole, and if good when so considered, objections to detached portions of it will not be entertained.

*Same—Self-defense.*—On self-defense the court below charged as follows : "No man can bring on a dangerous conflict, slay his antagonist, and then justify on the ground of self-defense." *Held*, error, inasmuch as it states the rule too broadly, and is calculated to mislead the jury.

Appeal from Tarrant county.

### STATEMENT

That the appellant fired the fatal shot and killed the deceased, is not disputed. Self-defense was relied upon by the appellant and to sustain this, his purpose was to prove that, when he fired the fatal shot, the deceased was manifesting, by his actions, a present intention to draw a pistol, with which to shoot the appellant, to prevent which, and in order to save his own life, the appellant drew his pistol fired upon, and killed, the deceased. Such was in effect the testimony of William Logan, the appellants father. By this same witness the defense proposed to prove that, on the day before the homi-

cide, John Tosh, deceased's hired hand, warned the defendant to be on his guard because Smith, the deceased, was hunting for him and would hurt him ; and that the said Tosh, on the day of the homicide and prior thereto, came to the witness's house and told the witness for God's sake to tell Dallas Logan, the defendant, to look out, for little Peter Smith, the deceased, was hunting for him and swore that he would have cattle or blood or something else ; that witness informed defendant, before the homicide, of this statement made by Tosh to witness. On objection by the state, this proposed proof was excluded by the trial-court on the ground that it was hearsay, and because no evidence had been introduced, tending to prove threats by the deceased. This ruling was duly excepted to by the defense, and raises one and the most important of the questions discussed and determined in the opinion of this court.

## OPINION.

One John Grimsley, a witness for the State, after being examined in chief was asked by the prosecuting officer, "whether his mother was not a witness for the state in this cause ;" to which he answered in the affirmative. The state's attorney then asked said witness, "why she was not here," and he said, while she was not sick in bed, yet he thought she was not well enough to come." To all of which the defendant excepted and moved the court to exclude the evidence, which motion was overruled and a bill of exception was reserved by defendant. This bill of exceptions does not state the grounds of objection urged to the evidence, and, failing to do so, we are not authorized or called upon, to review the ruling. (Davis v. State, 14 Ct. App., 645.)

Appellant in his brief urgently insists that the evidence ·upon its face being *per se* inadmissible, immaterial and foreign to any issue, was to say the least of it, an encumbrance to the record and might tend to draw the attentoin of the jury from the true issue and thereby prejudice the rights of appellant ; and the rule is invoked that whether it had such effect or not, it, being incompetent and having been admitted over objection, it will be presumed to have prejudiced him. (Tyson v. State, 14 Ct. App., 388.) We do by no means dispute the correctness of the rule to the legitimate extent to which it applies, but we cannot see in this instance that

the statement that Mrs. Grimsley was a witness for the state, and was sick and was unable to attend the trial, would in itself have any tendency to distract the minds of the jury from the issues in the case, and necessarily tend to prejudice the rights of the defendant. A number of matters have to be inferred before we would be warranted in concluding that it could possibly have such effect. To entitle the defendant to a revision of the ruling, he should have shown by his objections, incorporated into his bill of exceptions, the ground upon which the testimony would tend to prejudice the case. If the evidence is apparently harmless, though it may be *per se* incompetent, we imagine it would not be ground for reversible error. To be reversible error—that is, such as would warrant this court in reversing upon the ground of its incompetency, it must appear or be made to appear wherein it would also tend to prejudice the defendant. "A judgment, even in a criminal case, will not be reversed for immaterial errors." (McKnight v. State, 6 Ct. App., 158.) If the tendency of the evidence appears prejudicial or injurious, courts will then indeed rarely presume that the particular evidence which had been wrongfully admitted could have no influence on the deliberation of the jury." (Whart. Cr. Law, § 3090.)

The second ground relied upon for a reversal of the judgment of conviction in this case is the action of the court in refusing to permit appellant to prove by Wm. Logan that on the day before the homicide, one John Tosh, who was a hired hand of the deceased Smith, had warned the appellant to be on his guard, as Smith was hunting for appellant, and would hurt him, and that on the day of the killing, and prior thereto, the said John Tosh came to the house of said witness, William Logan, and told him, witness, "For God's sake to tell Dallas Logan, appellant, to look out, for that little Peter Smith, the deceased, was hunting for him, and swore that he would have cattle, blood or something else," and that he, witness, had prior to the homicide, informed appellant of what Tosh had said. (See appellant's bill of exceptions No. 2 Transcript page 28.) The court in excluding this evidence appended to the bill of exceptions a statement that, "Any proof tending to prove threats, except hearsay, would be admitted." The offered evidence was therefore excluded as hearsay.

Was the evidence hearsay ? What was the fact sought to be

proved ? Not that the threats had in fact been made, but that they had been communicated to the defendant. If the object had been to prove that the threats had been made, then, indeed, the fact that Tosh said they had, would have been hearsay and inadmissible. But that Tosh had communicated to the defendant the fact that deceased had made threats against his life was a fact which could as well be proved by any one who was present and heard Tosh communicate this fact to defendant, as could it have been proved by Tosh himself. This would not be hearsay. Mr. Greenleaf says : "It happens in many cases that the very fact in controversy is, whether such things were written or spoken, and not whether they were true, * * * In such cases it is obvious that the writings or words are not within the meaning of hearsay, but are original independent facts, admissible to the proof in the issue * * * This doctrine applies to all other communications wherever the fact that such communication was made, and not its truth or falsity, is the point in controversy." (1 Greenl. Ev. §§ 100, 101.)

If the witness, Logan, heard Tosh communicate to defendant the fact that the threat had been made by Smith, then the testimony of Logan that such communication was made, was not hearsay ; that it was heard by the defendant, was a fact which he could know and testify to as well as Tosh. It was error to exclude the evidence upon the ground that it is hearsay.

That the evidence was important and material, cannot be questioned. Where a defendant seeks to justify his action, when accused of murder, upon the grounds of threats against his life, our code permits him to introduce evidence of such threats whether communicated or not, but no threats are allowed as justification unless it be shown that at the time of the homicide, the person killed, by some act then done manifested an intention to execute the threats so made. (P. C. Art. 608.)

In the case we are considering, the theory of the defense was, that at the time the defendant drew his pistol, the deceased, by his acts and conduct, was apparently about to draw a weapon to be used upon defendant, and that defendant drew and fired his pistol to prevent the danger and in defense of his own life. In view then of this theory of the defense, the admissibility of the excluded evi-

dence did not depend upon the truth of the statement made by Tosh to defendant, but upon the effect which it might produce on his mind as an inducing cause for more prompt action on his part, to prevent the apprehended danger. (Carrico v. Comm., 7 Bush, (Ky.) 124 ; cases of self-defense, Horragan & Thompson, 389.) Considered in this aspect of the case, the evidence was both material and important, and the court erred in its exclusion from the jury.

Several objections are urged to the charge of the court to the jury. In most instances these criticisms and objections are made to detached portions or paragraphs, whilst at the same time it is admitted that the supposed errors are fully corrected and supplied by other portions of the charge. A general rule is that a charge must be considered as a whole, and if good when so considered, objections to detached portions will not be held to be reversible error. In this case most of the objections thus urged are in our opinion not of a character to have likely misled the jury or injured the right of defendant when we consider the objections in the light of the whole charge. There is one, however, which we think does not come within the rule, and which submits a question for serious consideration. In one of the paragraphs the jury were told that "No man can bring on a dangerous conflict, slay his antogonist and then justify on the ground of self-defense." This was stating the rule to broadly, and was calculated to mislead the jury. As said by appellant's counsel in his brief, under this charge, "a person would be guilty of murder although he may have innocently or ignorantly brought on a dangerous conflict in which his adversary is slain. It would make no difference whether he brought it on wrongfully or rightfully, the only question is : Did he bring on a dangerous conflict ?. If he did, he is guilty of murder. It makes no difference under this charge, what the intention of the defendant was, or what steps he may take to avoid the necessity of killing his antagonist, after the difficulty had been brought on he is a murderer."

Upon this subject the proper rule as applicable to the fact here shown, is the one given in Gilleland's case as follows : If the defendant voluntarily engages in a combat, knowing that it will or may result in death or some serious bodily injury which may probably produce the death of his adversary or himself, or by his own wrongful act brings about the necessity of taking the life of another to

prevent being himself killed, he cannot say that such killing was in his necessary self defense ; but the killing will be imputed to malice, express or implied, by reason of the wrongful act which brought it about, or malice from which it was done. (44 Tex., 536.) A person cannot avail himself of a necessity which he has knowingly and wilfully brought upon himself." (Reed v. State, 11 Ct. App. 509 ; King v. State, 13 Ct. App., 277.)

For the errors pointed out, the judgment is reversed and the cause remanded for a new trial.

White, P. J.

Reversed and remanded.